OGLESBY & MACAULEY *v.* STEAMBOAT D. S. STACY, CAPTAIN AND
OWNERS.

An action was brought against the endorser of a note, who after the institution of the suit admitted *Drawer of a Bill* the justice of the claim. *Held:* Such acknowledgement must be received either as an admission that the notices were good or as a waiver of them.

*By the Court:* We are not prepared to admit the authority of the Clerk to bind the owners of the boat by drawing bills of exchange, except so far as the consideration of the bill is proved to have enured to the benefit of the boat.

APPEAL from the Fourth District Court of New Orleans, *Reynolds*, J.
*W. O. Denegre*, for plaintiffs. *Wolfe & Singleton*, and *Clarke & Bayne*, for defendants and appellants.

BUCHANAN, J. This is a suit against the owners of a steamboat, upon a bill of exchange drawn by the Clerk of the boat, of the following tenor:

$2,100.                                    New Orleans, October 6, 1853.

One day after sight of this second of exchange, first unpaid, pay to the order of *Oglesby & Macauley*, two thousand one hundred dollars, value received, which place to account steamboat D. S. Stacy.

SAM. LAWSON, Clerk.

To Messrs. *Hill, Lockwood & Voorhies*,
                                    St. Louis.
(Endorsed)               Pay *Matthews, Finlay & Co.* or order.
                                    OGLESBY & MACAULEY.
                         Pay *Lucas & Simonds* or order.
                                    MATTHEWS, FINLAY & Co.

The petition also sets forth the consideration of the bill to have been, advances made, and supplies furnished, to the steamboat, by the plaintiffs.

The answer was a general denial, and the case has been defended principally upon a supposed want of notice to the drawer of the dishonor of the bill. The proof on the subject of notice is, that the notary in St. Louis, who protested the bill, put a letter in the post office, on the day of the protest, directed to *Matthews, Finlay & Co.*, the last endorsers, and enclosing notices for the payees and for the drawer. The bill had been discounted by *Matthews, Finlay & Co.* for plaintiffs, who paid the former its amount, with damages added. It does not appear what was done by *Matthews, Finlay & Co.*, with the notice for drawer enclosed to their address. But it is proved by two witnesses, that *Switzer*, Captain and part owner of the boat, admitted the justice of this claim to the suit brought. A similar admission on the part of another owner, *James Vaughan*, is proved by one witness. Such acknowledgments, in the language of the Supreme Court in the case of *Union Bank* v. *Grimshaw*, 15 L. R. 340, " must be viewed either as an admission that the notices were good, or as a waiver of them." Besides, it is proved, that the Captain and the Clerk of the boat were aware of the dishonor of the bill, before suit brought, and that the Captain even sent a telegraphic despatch from Vicksburg to plaintiffs to have the boat attached on her arrival in New Orleans, for this debt. The boat left St. Louis in the night of the day preceding the protest of the bill, and was attached immediately after her arrival in New Orleans. When we add to these circumstances, the fact, established by evidence given without objection, that

OGLESBY
v.
STEAMB'T STACY.

the boat had no funds in the hands of the drawees at the date of the bill, nor afterwards, the liability of the two owners, who have acknowledged its validity, seems clear.

The consideration of the bill is proved to have been, orders upon *Oglesby & Macauley*, for charges on goods shipped on board the Stacy, except about two hundred dollars due for salt purchased by the Captain.

We are not prepared to admit the authority of the Clerk to bind the owners of the boat, by drawing bills of exchange, except so far as the consideration of the bill is proved to have enured to the benefit of the boat. Upon this principle, *Hill* and *Austin*, the two owners who have not acknowledged the correctness of this bill, are only bound to the extent of nineteen hundred dollars of its amount.

The appellees have prayed for damages for a frivolous appeal in their answer filed in this court; and as to *Switzer*, at whose instance this suit is proved to have been brought, we think such damages should be allowed.

It is therefore decreed, that the judgment of the District Court be amended; that plaintiffs recover of *William Switzer, James Vaughan, Ezra Hill,* and *Elisha S. Austin, in solido,* nineteen hundred dollars, with legal interest from 17th November, 1853, date of judicial demand, and costs of the District Court; and of *William Switzer* and *James Vaughan, in solido,* the further sum of two hundred dollars, with legal interest from October 21st, 1853, two dollars and fifty cents costs of protest, and one hundred and five dollars damages on the protested bill; and of *William Switzer,* individually, a further sum of one hundred dollars as damages for a frivolous appeal; the costs of appeal to be paid, one-half by appellees, and one-half by the appellant *Vaughan* and *Switzer.*

SLIDELL, C. J. I think it clear there should be judgment against *Switzer,* Captain and part owner. He was cognizant of and directed the drawing of the bill by the Clerk, and I am satisfied was seasonabbly informed of its dishonor, and, moreover, seems to have acted in bad faith in the way he left St. Louis in the night, without providing for the bill.

I am of opinion that *Switzer,* by mere virtue of his position as Captain and part owner, and without other authority shown, cannot be considered as authorized to bind his co-proprietors in the form of and with the liabilities attaching to a bill of exchange, drawn by the Clerk under his direction. But I am not prepared to say, that as part owner, he had not a right to procure freight for the boat in the way he did, which I understand to have been by advancing to the New Orleans consignees in transitu, the charges on goods, in order to get the freight for them to St. Louis, while he would look for reimbursement to the ultimate consignee. It was to get freight in this way, he borrowed money from plaintiffs to pay the charges, and this was part of the consideration of the bill. As the boat made her voyage, we may fairly infer the arrangement has enured to the benefit of the owners. Whether as mere Captain, *Switzer* could have bound the owners for money borrowed for such purpose, we need not now inquire.

I think *Switzer,* as part owner, had no authority to bind his co-proprietor by a purchase of cargo. But as to this item, there is sufficient proof of *Vaughan's* assent.

I therefore concur in the decree now rendered.